MARION S. HAMILTON *vs.* GEORGE R. COSTER.

Middlesex.     March 17, 1924. — June 2, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Equity Pleading and Practice,* Demurrer, Finding by judge, Appeal. *Equity Jurisdiction,* Specific performance of contract. *Frauds, Statute of. Agency,* Scope of authority, Ratification by principal. *Contract,* Under seal, Ratification.

A demurrer to a bill in equity for specific performance of an alleged agreement in writing set forth the ground that no sufficient memorandum of the agreement was signed by the defendant or by his authorized agent as required by the statute of frauds. The bill alleged that the contract was signed by the defendant by a certain person as his attorney. It

did not appear from the allegations of the bill that the attorney was not duly authorized to execute the contract on behalf of the defendant. The demurrer was overruled. *Held*, that the question, whether the attorney had authority to sign for the defendant, was one of fact and could not be raised by the demurrer; and that the demurrer properly was overruled.

Upon an appeal from a final decree in a suit in equity which was heard by a judge, a commissioner having been appointed under Equity Rule 35 to take the evidence, findings of fact by the judge will not be reversed unless plainly wrong.

In a suit in equity for specific performance of an alleged agreement in writing under seal by the defendant to purchase certain real estate from the plaintiff, a married woman, it appeared that the agreement was signed in the name of the plaintiff by her husband. *Held*, that the question, whether the plaintiff's husband had authority to execute the contract in her behalf, need not be considered, as the bringing of the suit to enforce her rights under the contract constituted a ratification as a matter of law.

At the hearing of the suit above described, there was evidence tending to show that the person alleged to have been the defendant's attorney received a sum of money from the defendant which he turned over to the plaintiff, and that the money was given to him for the purpose of making a deposit in accordance with the agreement; that the defendant went to a real estate broker acting for the plaintiff three times, making an offer for the property, and told the broker that the alleged attorney was his attorney and acted for him in all business transactions and had a power of attorney; that soon after the agreement was signed the defendant made a fourth visit to the premises to make a list of the furnishings; that he spoke of plans for the occupancy of the premises and said he wanted to move in as soon as possible and that he intended to make the place a year-around home; that a few days before the day for the performance of the agreement the defendant said that he would not be ready on that day and asked the real estate broker to arrange with the plaintiff for an extension of the agreement. *Held*, that the evidence fully warranted a finding that the alleged attorney was authorized by the defendant to execute the agreement in behalf of the defendant and that the defendant knew of and ratified his act.

The act of an alleged agent in executing a contract in writing and under seal in the name of his alleged principal may be ratified by the principal by parol.

An agreement in writing for the sale of land provided that " Taxes, water rates, insurance, etc., shall be adjusted as of July 1st, 1922." In a suit in equity for specific performance of the agreement, it was *held* proper to require the vendor to pay taxes on the property up to July 1, 1922.

An agreement in writing for the sale of real estate provided that until full performance the buildings on the premises should be kept insured by the seller. In a suit in equity by the seller for specific performance of the agreement, it was *held* proper to require that the seller be reimbursed for insurance premiums paid after the date set in the agreement for performance.

Upon the evidence at the hearing of the suit above described, it was *held* proper to require the defendant to pay to the plaintiff expenses incurred in the care and preservation of the property after the time when the defendant under the contract should have completed the sale and taken possession, there being no evidence to show that the expenses were not reasonable and many of them being incurred at the request of the defendant.

An agreement in writing provided for the sale of certain described real estate " together with all the personal property of every name, nature and description situated on said premises including household furniture, live stock, etc." In a suit in equity by the seller to require specific performance of the agreement by the purchaser, it was *held* proper to require specific performance of the agreement not only as it related to the purchase of the real estate but also as it related to the personal property.

BILL IN EQUITY, filed in the Superior Court on August 24, 1922, for specific performance of an agreement for the purchase by the defendant from the plaintiff of certain real estate in that part of the town of Scituate known as Egypt, " together with all the personal property of every name, nature and description situated on said premises including household furniture, live stock, etc.," the agreement to be performed on July 1, 1922.

The defendant demurred to the declaration as described in the opinion. The demurrer was heard by *Sanderson*, J., and was overruled. The suit afterwards was heard by *Wait*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material evidence and certain findings by the judge are described in the opinion.

The judge further found as follows: " The defendant refused to complete [performance] because of financial reasons arising after he had known and approved what had been done. He is bound by this contract.

" Since July 1, 1922, in the necessary upkeep of the property, taxes, insurance, and so forth, and in performing work upon it at the request of the defendant before July 1, 1922, the plaintiff has incurred expense in the amount of $2,850. This amount should be allowed in the adjustment provided for by the agreement."

By order of the judge, a final decree was entered ordering specific performance of the contract " in all its terms as of

July 1, 1922," by the payment in cash and a note secured by a mortgage of the purchase price named in the contract and also by the payment of $2,850, " which the plaintiff has paid for the necessary upkeep of the property since July 1, 1922, to May 1, 1923. This is without prejudice to any right the plaintiff may have to recover for additional charges and expenses, if any, arising since May 1, 1923."

The defendant appealed from the order overruling the demurrer and from the final decree.

*C. W. Lavers,* for the defendant.

*H. A. Murphy,* for the plaintiff.

CROSBY, J.   This is a suit in equity whereby the plaintiff seeks to obtain specific performance of a written agreement for the purchase of real estate, and to recover for the loss of interest, for taxes and insurance premiums paid, and expenses of caring for and carrying on the property since July 1, 1922, the date when, by the terms of the agreement, it was to be conveyed by the plaintiff to the defendant.   The defendant demurred to the bill, setting forth among other grounds that no sufficient memorandum was signed by the defendant, or by his authorized agent, within the statute of frauds.   The demurrer was rightly overruled.   The contract purports to be signed by the defendant by one Hill, his attorney.   The bill alleges that the agreement was signed by the defendant, and on its face makes out a case for equitable relief.   It does not appear from the bill that the attorney was not duly authorized to execute the contract on behalf of the defendant. The question whether Hill had such authority is one of fact and cannot be raised by demurrer.   *Turners Falls Fire District* v. *Millers Falls Water Supply District,* 189 Mass. 263, 266.   *Worcester Board of Health* v. *Tupper,* 210 Mass. 378.   *Bowker* v. *Torrey,* 211 Mass. 282.   See *Ahrend* v. *Odiorne,* 118 Mass. 261, 268.

The answer denies that the agreement was signed on the defendant's behalf by his attorney with authority to do so, and states that the contract was not sufficient under the statute of frauds; it admits the payment of $500 to the plaintiff, but alleges that such payment was not made in accordance with the agreement; and also, that the payment was

induced by the misrepresentations of the plaintiff and for that reason it should be returned to him.

The trial judge made the following findings: " The agreement for sale was signed by the agent of the defendant held out to the agents of the plaintiff by the defendant as authorized to act for him in matters connected with the transaction. The defendant knew what his agent had done and ratified it. There were no false and fraudulent misrepresentations." The judge also found that the plaintiff had been obliged to expend certain sums for taxes, insurance and expenses for the necessary upkeep of the property since July 1, 1922, (when the agreement for sale was to have been carried out) and in performing work upon the property at the request of the defendant before that date, amounting to $2,850, which sum the plaintiff was entitled to recover; and that a decree for specific performance should be entered. A final decree was entered in accordance with the findings and order.

It is well settled that, on an appeal from a final decree in equity, with a report of the evidence, the findings of fact made by the trial judge who has heard the witnesses will not be reversed unless plainly wrong. *W. B. Manuf. Co.* v. *Rubenstein*, 236 Mass. 215, 219. *Noon* v. *Bunker*, 237 Mass. 585, 587.

The agreement was signed " Marion S. Hamilton by R. J. H." " R. J. Hamilton." " Geo. R. Coster by Edgar S. Hill, Atty." The question whether the plaintiff's husband had authority to execute the contract in her behalf need not be considered, as the bringing of this suit to enforce her rights under the contract constitutes a ratification of it as matter of law. *Gross* v. *Cohen*, 236 Mass. 468. *Noon* v. *Bunker, supra.*

The finding by the trial judge that Hill, the defendant's attorney, was authorized by the defendant to sign the contract, and that the latter ratified the agent's act cannot be said to have been without evidence to support it. Hill testified that he received a check for $500 from the defendant which was turned over to the plaintiff, and that the check was sent to him by the defendant for the purpose of making a deposit in accordance with the agreement.

One Petersen, a real estate broker who acted for the plaintiff in the sale of the estate, testified that the defendant came to see him three times and offered $30,000 for the property; that the defendant told him that Hill was his attorney and acted for him in all business transactions and had a power of attorney; that soon after the agreement was signed the defendant made a fourth visit to the premises to make a list of the furnishings; that he spoke of plans for the occupancy of the premises and said he wanted to move in as soon as possible, that he intended to make the place a year-around home. This witness also testified that a few days before July 1, the defendant said he would not be ready on that day and requested the witness to arrange with the plaintiff for an extension of the agreement. The evidence fully warranted the finding that Hill was authorized by the defendant to execute the agreement and that the defendant knew of and ratified his act. *Old Colony Railroad* v. *Evans,* 6 Gray, 25. *Holbrook* v. *Chamberlin,* 116 Mass. 155, 161. *Rand* v. *Farquhar,* 226 Mass. 91, 97. See *Price* v. *Moore,* 158 Mass. 524. Such ratification could be by parol. *Gross* v. *Cohen, supra.* It follows that the agreement was sufficient to satisfy the requirements of the statute of frauds.

There was no error in allowing the plaintiff to recover as damages amounts paid by her for loss of interest, taxes, insurance and expenses incurred in the care and upkeep of the property since July 1.

The agreement provides that " Taxes, water rates, insurance, etc., shall be adjusted as of July 1st, 1922." It follows that, as to taxes assessed on the property, they are to be paid by the vendor up to that date, and after that time they should be paid by the purchaser. *Davis* v. *Parker,* 14 Allen, 94.

As to insurance. The agreement provides that until full performance the buildings on the premises shall be kept insured by the plaintiff. From this it is plain that the premiums are to be paid by the vendor until July, when full performance was contemplated; that was the date fixed when the vendee was to take the property and when the obligations of the vendor with reference to it should terminate. In

these circumstances it is equitable that the plaintiff should be reimbursed for insurance premiums paid by her after July 1. *Williams* v. *Lilley*, 67 Conn. 50.

As to the remaining expenses allowed to the plaintiff in the care and preservation of the property, · there was no evidence to show that they were not reasonable, and many of them were incurred at the request of the defendant. We are unable to say that the judge was not justified in finding them to be necessary and reasonable expenditures made after the time when the defendant, under the contract, should have completed the sale and taken possession. *Carrodus* v. *Sharp*, 20 Beav. 56. *Barsht* v. *Tagg*, [1900] 1 Ch. 231, 235. See *Fleming* v. *O'Donohue*, 306 Ill. 595.

The objection of the defendant that specific performance will not lie as to the items of personal property on the premises and included in the sale cannot be sustained. Such items were merely incidental to the main contract which related to the sale of the real estate.

The exceptions to the admission and exclusion of evidence must be overruled. As no error of law appears, the interlocutory and final decrees are affirmed with costs.

*So ordered.*