JOSEPH F. FLYNN *vs.* MONTE J. WALLACE & another, trustees.

Plymouth. April 7, 1971. — June 23, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

*Contract,* For sale of real estate, Performance and breach, Modification. *Equity Jurisdiction,* Specific performance. *Frauds, Statute of. Agency,* Agent's knowledge. *Notice. Bona Fide Purchaser.*

Where it appeared in a suit in equity that an agreement for the purchase and sale of land was extended twice, the second extension on condition that the purchaser pay an additional deposit by a certain date, that he had difficulty with the title and engaged an engineer to prepare a plan from which counsel for the seller would "work up" a deed, that shortly after that date and expiration of the second extension the plan was completed and delivered to the seller's counsel, preparation of a deed was discussed, payment of the additional deposit was requested for the first time and was made and deposited by the seller, and the deed was drawn and mailed to the seller for execution, that neither the agreement nor the evidence indicated that time was of the essence, and that the purchaser was ready, willing, and able to tender the balance due on presentation of a deed, it was held that payment of the additional deposit was not made in an attempt to revive and reëstablish a lapsed agreement, but, with other conduct of the parties, indicated that they considered

the agreement to continue in full force and effect, and that it was in effect when the seller subsequently sold the land to a third person. [716–717]

An unsigned deed purporting to convey land of a corporation pursuant to an agreement of sale signed by its president on its behalf, and minutes of a meeting of the corporation's stockholders and a formal vote of the corporation, both authorizing the sale, were sufficient memoranda to satisfy the statute of frauds with respect to modifications of the contract arising from conduct of the parties. [717]

The dealings of a real estate broker with an owner of land known by him to be under an agreement to sell the land to the plaintiff in a suit in equity, and with trustees to whom the owner ultimately sold the land, justified findings by the judge that the broker was acting for the trustees and not for the owner, and that the trustees knew of the outstanding rights of the plaintiff and were not bona fide purchasers. [717–718]

In a suit in equity wherein it was determined that the plaintiff was entitled to a conveyance of land by the defendants, who were not bona fide purchasers of the land when they received a conveyance of the land by its owner because they then had knowledge of a prior sale and purchase agreement respecting the land between the owner and the plaintiff in which the only reference to taxes was the owner's obligation to convey the land free of encumbrances "except . . . such taxes for the current year as are not due and payable on the date of the delivery of . . . [the] deed," it was held that the plaintiff should not be required to reimburse the defendants for taxes paid by them during the time they possessed the land, nor to pay the defendants interest on the purchase price to be paid by the plaintiff to them. [720]

BILL IN EQUITY filed in the Superior Court on May 9, 1966.

The suit was heard by *Kalus,* J.

*Herbert P. Wilkins* (*Reginald H. Howe* with him) for the defendants.

*James P. Lynch, Jr.* (*Henry G. Stewart* with him) for the plaintiff.

TAURO, C.J.    This is an appeal by the defendants Monte J. Wallace and Neil W. Wallace, trustees of the Arlington Trust, from a final decree of the Superior Court ordering the conveyance of certain land to the plaintiff.

The facts as found by the trial judge are summarized. On December 18, 1965, Joseph F. Flynn entered into a purchase and sale agreement with the Prosperity Development Corporation of Braintree, Massachusetts, to purchase for $120,000 a 438 acre tract of undeveloped land situated in the towns of Braintree, Holbrook and Weymouth.[1]    The

---

[1] The agreement was not recorded.

agreement recited that "[s]aid land is to be conveyed on or before February 15, 1966, by a good and sufficient quit-claim deed." At all times Flynn was acting as agent and nominee for one Ralph Tedeschi. Of the purchase price, $5,000 was to be paid as a deposit, leaving the balance due to be paid in cash upon delivery of the deed. After Joseph A. Della Valle, president of Prosperity, had signed the agreement on behalf of Prosperity, an internal dispute arose among the stockholders of Prosperity as to corporate control and as to the authority of Della Valle. This issue was resolved at a stockholders' meeting on February 23, 1966, when the purchase and sale agreement between Flynn and Prosperity was ratified.

On February 15, 1966, the agreement was extended in writing: ". . . on the same terms and conditions up to and including March 15, 1966." On March 11, 1966, the agreement was extended "up to and including" March 22, 1966, on payment of an additional deposit of $5,000 on or before March 15, 1966. During this time, Flynn had encountered difficulty in tracing the chain of title for the land and, at the suggestion of Prosperity's counsel, Mr. Lane, he engaged Gale Engineering Company to prepare a plan of the locus. Mr. Lane agreed that in preparing the deed he would "work up" a description of the property from the plan prepared by Gale. This plan was completed by Gale on March 25 or 26 and was delivered by Flynn to Mr. Lane's office on the same day. At that time Flynn and Mr. Lane discussed the preparation of the deed.

On March 25, 1966, Della Valle called Mr. Lane and said he wanted the second $5,000 deposit, which was mentioned in the extension to the purchase and sale agreement. By prearrangement a check for this sum was delivered to Mr. Lane on March 25 and he, in turn, sent it to Della Valle in Florida, where it was deposited to the account of Prosperity on March 28, 1966. No prior demand for this payment had been made. Mr. Lane completed the deed on April 25 and mailed it to Della Valle in Florida on April 26. On April 28, Prosperity, by formal vote, authorized execu-

tion of the deed to Flynn. About this time Mr. Lane received information concerning a "possible third-party sale" from one Dodd, a real estate broker who had offices in Ohio and Florida. At that time Mr. Lane informed Dodd of the impending sale to Tedeschi. The land was subsequently sold to Arlington Trust, acting through its two cotrustees, defendants in this suit, for the sum of $160,000.

The final page of the deed executed by Prosperity to Arlington contained the typewritten words "April , 1966," indicating that the deed had been prepared for conveyance of the locus to a grantee in April, 1966. The closing was held at 7 A.M. on May 6, 1966, at the offices of Arlington in Boston and the deed was recorded in the registry of deeds at Dedham at 9:45 A.M. that same morning.

The judge made certain findings and rulings which were later adopted as the statutory report of material facts. See G. L. c. 214, § 23. In his report, the judge found and ruled that, inter alia, the plaintiff was ready, able and willing to purchase the land from Prosperity in accordance with the terms of their agreement, as extended by mutual consent; that Prosperity violated its agreement to sell the locus to the plaintiff; and that the defendants, the trustees of the Arlington Trust, were not bona fide purchasers, having had either knowledge of the existence of a valid and enforceable agreement between the plaintiff and Prosperity concerning the land, or knowledge of an outstanding claim of right in conflict with their proposed acquisition. A final decree was entered ordering the defendants to execute a conveyance of the land to the plaintiff upon payment of $110,000, the remainder of the purchase price specified in his contract with Prosperity, from which decree the defendants appealed. The evidence is reported.

Three principal issues are presented for determination: (1) whether there existed a valid contract between Flynn and Prosperity at the time of the conveyance to Arlington; (2) whether Arlington was a bona fide purchaser of the locus and as such entitled to retain the property; and (3) which party should pay the real estate taxes from 1966 onward

should the judge's decree for conveyance be upheld. They will be treated sequentially.

1. The defendants claim that Flynn's failure to pay the second deposit of $5,000 on March 15 as stipulated in the extension to the purchase and sale agreement constituted a breach of the agreement and rendered any subsequent oral extension of the agreement inoperative as within the statute of frauds.

Mr. Lane, however, did not request the $5,000 deposit before March 15 or March 22. The judge found and ruled on these facts that "the time for payment was waived by Prosperity since it accepted, without any reservation, and deposited a check from . . . Tedeschi in said sum [$5,000] after the date specified in the extension addendum." The judge further found that the parties had waived the date for passing papers until such time as the preliminaries mutually agreed upon by the parties had been completed, namely, "(a) the completion by Gale Engineering Company of engineering work and preparation of a plan for the locus; (b) the completion of the deed by Lane (to be 'worked up' by him from the engineering plan); and (c) the execution and return to Lane of the deed to be signed by Mr. Della Valle in behalf of Prosperity."

The parties to an agreement may agree upon a time for passing papers different from that provided in the agreement. *Johnson* v. *Kelley*, 342 Mass. 724, 726. Mutual agreement on a new date for performance can be inferred from the conduct of the parties and from the attendant circumstances. See *Grant* v. *Carlisle*, 328 Mass. 25, 29; *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 390. The modified time and manner of performance is a question of fact. *Moskow* v. *Burke*, 255 Mass. 563, 566–567. *Porter* v. *Harrington*, 262 Mass. 203, 208.

Here, the agreement contained no provision that time was of the essence. It was extended twice, at least in part due to the inability of Prosperity to comply with the terms of the original agreement because of questions concerning corporate control. At no time did Mr. Lane choose to test the

plaintiff's ability and willingness to perform by tendering the deed and demanding payment. There was evidence that Flynn was ready, willing, and able to tender the purchase money at the time set for performance. Ability and readiness to perform according to the terms of the provisions of the purchase and sale agreement are sufficient, without actual tender of the purchase price. *Marlowe* v. *O'Brien*, 321 Mass. 384. In order to put the purchaser in default, it is normally required that the vendor tender a proper conveyance on the date set for performance. *Welch* v. *Matthews*, 98 Mass. 131. Manifestly, this was not done here.

In *Gentile Bros. Corp.* v. *Rowena Homes, Inc.* 352 Mass. 584, 589–590, we stated: "Nowhere does it appear that either party . . . intended that the failure to pass papers on June 5 should spell the end of the agreement. Rather, the conversations . . . prior to June 5 show that the parties intended that the agreement should be carried out at a later date. . . . There was an effective waiver of the provision." In *Porter* v. *Harrington*, 262 Mass. 203, 207, 208, we stated: "Waiver may be manifested by acts as well as by words. . . . It is difficult to frame a contract so as to foreclose the operation in equity of the doctrine of waiver in order to prevent an injustice." We cannot say "that the findings made by the judge who saw the witnesses and heard them testify are plainly wrong." *Berman* v. *Coakley*, 257 Mass. 159, 162. *Barnum* v. *Fay*, 320 Mass. 177. *Willett* v. *Willett*, 333 Mass. 323. In the instant case conduct of the parties indicated a clear intention that the original agreement was to be consummated within a reasonable time.

On the basis of all the facts it seems clear that the manifest intention of the parties as evidenced by their communications and their conduct was that the date for passing papers was dependent on the preparation of a plan by Gale in order that a proper description for a deed could be drawn by Mr. Lane as counsel for Prosperity. At all times the plaintiff was able, ready and willing to consummate the deal when a deed was ready. The additional $5,000 payment due on March 15 was never considered by the parties as a condition

to the continuing validity of the contract. The judge's finding that payment of the $5,000 by the plaintiff on April 28 and its acceptance by Prosperity ratified an extension of the agreement does not preclude a further finding that the initial written agreement was nonetheless in full force and effect at the time. In short, the payment was not made in an attempt to revive and reëstablish an agreement which had already lapsed but rather it was a further indication that the parties considered the agreement to be in full force and effect.

Furthermore, the evidence does not require a conclusion that "time was of the essence." In equity, this is a question of fact. *Gevalt* v. *Diwoky*, 319 Mass. 715, 716. Pomeroy, Eq. Jur. (5th ed.) § 1408, at p. 1054.

Moreover, we cannot agree that enforcement of the purchase and sale agreement as modified is barred by the statute of frauds. In addition to an unsigned deed conveying the premises to Tedeschi there were the corporate minutes of the stockholders' meeting of February 23 authorizing the sale to Flynn. Prosperity again formally voted on April 27 to authorize the sale to Tedeschi. Such memoranda are sufficient to satisfy the statute of frauds. *McManus* v. *Boston*, 171 Mass. 152.

2. The judge found that Dodd was acting as a broker for the defendants and was not acting for Prosperity. The question whether a broker is the agent of the buyer or the seller is one of fact. *DiBurro* v. *Bonasia*, 321 Mass. 12, 13–15. *McEvoy* v. *Ginsberg*, 345 Mass. 733, 736. Upon the evidence we cannot say that the judge's finding was plainly wrong. On the contrary such a finding was justified on the basis of Dodd's dealings with the defendants and with Prosperity. Dodd was aware of the plaintiff's agreement with Prosperity.[2] Dodd's knowledge, as agent, is imputed to Arlington.

---

[2] On April 26, Dodd told Monte Wallace, one of the defendants, we were "in a horse race" with Tedeschi. On April 28, Dodd was told by Mr. Lane that there was a pending sale under agreement with Flynn and that as far as he knew the sale was going through and should go through.

"The general rule is fully established, that notice to an agent in the business or employment which he is carrying on for his principal is a constructive notice to the principal himself, so far as the latter's rights and liabilities are involved in or affected by the transaction. This rule alike includes and applies to the positive information or knowledge obtained or possessed by the agent in the transaction, and to actual or constructive notice communicated to him therein." Pomeroy, Eq. Jur. (5th ed.) § 666, at p. 887.

More specifically, it is settled law that a real estate broker is under a duty to disclose to his principal all facts within his knowledge which are or may be material to the matter in which the broker is employed or which might influence his principal in the transactions subject to the agency. See Restatement 2d: Agency, § 274. As we said in *Ries* v. *Rome*, 337 Mass. 376, 381: "[T]he broker and agent of the beneficial owners of the property was under a duty to disclose to them matters learned in the conduct of the agency and relevant to its success."

The judge found that Arlington, through its trustees, had knowledge of the existence of an outstanding claim of right and hence was not a bona fide purchaser.[3] See *Connihan* v. *Thompson*, 111 Mass. 270. The sufficiency of knowledge putting a prospective purchaser on inquiry presents a question of fact. *Hughes* v. *Williams*, 218 Mass. 448, 451. Merrill, Notice, § 73, at pp. 84–85. The findings of the judge will not be reversed unless they are plainly wrong. *Aldrich* v. *Adams*, 166 Mass. 141, 142.

3. The defendants urge that if specific performance is affirmed they should be reimbursed for real estate taxes paid by them during the term they have possessed the locus. The issue, stated differently, is whether the plaintiff, as an innocent purchaser, may be held liable for the expenses of

---

[3] The judge's finding that the defendants had "knowledge of an outstanding claim of right in conflict" with that of the plaintiff is fortified by the 7 A.M. meeting to pass title between Prosperity and the defendants after it was learned that "The Tedeschis" were going to get a restraining order and take the matter to court. The deed was recorded shortly before the issuance of a restraining order.

ownership during the period that he has been deprived of title and possession in the circumstances of this case. We cannot agree that the plaintiff should assume this responsibility.

The only reference to taxes in the original agreement between Flynn and Prosperity is the standard provision that the seller is to convey the land by deed free from all encumbrances "except . . . [s]uch taxes for the current year as are not due and payable on the date of the delivery of said deed." There is no specific date in the contract for the transfer of the obligation to pay real estate taxes, unlike the situation in *Hamilton* v. *Coster*, 249 Mass. 391, 396.[4]

An earlier Massachusetts decision, *Davis* v. *Parker*, 14 Allen, 94, awarded taxes of $140 to the vendor, where specific performance of a contract to convey timberland was decreed ten years after the execution of the contract. In that case, there was evidence that the growth of the timber during this period had conferred a substantial benefit to the plaintiff, offsetting his obligation to pay the real estate tax.

In *Krabbenhoft* v. *Gossau*, 337 Ill. 396, the court declined to charge the purchaser with taxes and special assessments paid by the vendor where the land was unimproved and no rental value was awarded.[5]

In *Pearce* v. *Third Ave. Improvement Co.* 221 Ala. 209, 215, the court held that the vendor is not entitled to credit for ordinary taxes paid during the delay in performance, stating that "having by breach of contract retained title and possession so that the property was lawfully assessable to them, and the taxes were their own obligations, there is no

---

[4] In *Hamilton* v. *Coster, supra*, the plaintiff brought the bill in equity to compel specific performance of an agreement by the defendant to purchase the plaintiff's property. Decreeing specific performance the court stated, "The agreement provides that 'Taxes, water rates, insurance, etc., shall be adjusted as of July 1st, 1922.' It follows that, as to taxes assessed on the property, they are to be paid by the vendor up to that date, and after that time they should be paid by the purchaser."

[5] The court stated, "It would be a strange doctrine which would compel a court of chancery to hold that parties kept out of title and possession by the vendors' default must yet assume the vendors' obligations during such period." P. 412.

equitable ground to charge same to complainant on accounting." In *Mitchell* v. *Mutch*, 189 Iowa, 1150, it was held that the vendor was not entitled to credit for four years' taxes paid by him while in possession of the property, having defaulted in his contract to convey.

There is a paucity of authority in Massachusetts concerning the tax issue. No Massachusetts case on this point since *Hamilton* v. *Coster*, *supra*, has come to our attention.

It would be most difficult to establish a rule of general application. Indeed we believe that a general rule would be inappropriate but, rather, that the circumstances of each case must be evaluated and a decision made on the basis of well defined doctrines in equity. Thus, for example, if specific performance is decreed following reasonable conflicting viewpoints on the law and facts and where good faith has been established, then such equitable doctrines as unjust enrichment could be invoked within the court's discretion.

In the instant case it seems clear to us that the transfer of the real estate to Arlington by Prosperity was motivated by a more substantial offer from the Wallaces and was done with sufficient knowledge of the intervening rights of the plaintiff.

On the basis of all the facts and circumstances in this case, we believe that Arlington was not an innocent purchaser for value. We conclude that the plaintiff is entitled to specific performance in accordance with the decree of the Superior Court and that he is not required to pay the taxes prior to the time he takes title to the locus nor is he obligated to reimburse the defendants for interest on the purchase price.

The decree is modified in accordance with this opinion, and as so modified, it is affirmed. The plaintiff is to have costs of appeal.

*So ordered.*