INVESTORS AUTOMOTIVE HOLDING COMPANY, INC.
*vs.* ALICE M. DONOVAN & others.

Essex. April 18, 1974. — May 30, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Equity Pleading and Practice,* Findings by judge, Report of material facts, Appeal. *Landlord and Tenant,* Use of leased premises by lessee.

In the circumstances, where a purported statutory report of material facts by the judge in a suit in equity was clearly insufficient, but the evidence was reported, this court did not remand the suit for further findings by the judge but instead examined the reported evidence in determining the issues. [333-334]

Where a lease provided that the leased premises could be used by the lessee for "a car wash operation and . . . purposes incident or allied thereto . . . also . . . for any other lawful purpose with the . . . consent of the lessor[s] which shall not be unreasonably withheld," this court on the record of a suit for declaratory relief by an assignee of the lessee found no occasion to disturb determinations by the trial judge that the defendant lessors were not unreasonable in refusing the plaintiff the right to store and sell at retail gasoline on the premises besides conducting a car wash operation thereon, and that the terms "incident" and "allied" in the lease did "not include or permit as of right" such storage and sale of gasoline, and affirmed a final decree adverse to the plaintiff. [333, 334-337]

BILL IN EQUITY filed in the Superior Court on August 24, 1972.

The suit was heard by *Cross,* J.

*Lawrence B. Litwak* for the plaintiff.

GRANT, J. The plaintiff, the assignee (in 1970) of a 1967 lease from the defendants of certain premises in

Saugus, has appealed from a final declaratory decree of the Superior Court adverse to its contention that it is entitled to use the premises for the storage and retail sale of gasoline. The case is here on the trial judge's response to the plaintiff's request under G. L. c. 214, § 23 (as amended through St. 1947, c. 365, § 2), for a report of material facts and on a report of all the evidence.

The premises in question are located at 425 Broadway in Saugus, and the only building located thereon is and has been used by the plaintiff in conducting an automatic car wash business.[1] The critical provisions of the lease read: "7. A. The premises demised hereunder can be used by the lessee for the conduct of a car wash operation and for any and all purposes incident or allied thereto. Further, the premises may also be used for any other lawful purpose with the written consent of the lessor which shall not be unreasonably withheld." The plaintiff introduced evidence to the effect that it had obtained a license from the proper authorities for the storage and sale of gasoline (G. L. c. 148, § 13), evidence of its request to some of the defendants for their permission to use the premises for that purpose and of the refusal of such request, and evidence designed to convince the judge (so far as it might be a question of fact) that the sale of gasoline is incidental or allied to the conduct of a car wash operation. The defendants rested without offering any evidence.

The judge voluntarily filed "Findings of Fact, Rulings of Law and Order for Decree." That paper contains little more than a recitation of the plaintiff's contentions, a quotation of the lease provisions set out above, and a summary of portions of the evidence offered by the plaintiff. As already noted, the plaintiff filed a request for a report of the material facts found by the judge. The judge filed another paper in which he purported to adopt

---

[1] The building is nowhere described. Contrast *Silk* v. *Commonwealth,* 1 Mass. App. Ct. 149, 150-151 (1973).

the "findings" already voluntarily made by him as his report of material facts. See *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv. Inc.* 359 Mass. 221, 223 (1971); *Flynn* v. *Wallace,* 359 Mass. 711, 714 (1971). Those "findings" were clearly insufficient to meet the requirements of a statutory report under G. L. c. 214, § 23. *Sidlow* v. *Gosselin,* 310 Mass. 395, 396-397 (1941). *Vergnani* v. *Vergnani,* 321 Mass. 699, 700-701 (1947). *Lawson* v. *Lawson,* 340 Mass. 781 (1959). The plaintiff took no exception to the judge's refusal to comply with the statute (see *Vergnani* v. *Vergnani,* 321 Mass. 699, 701 [1947]; *Bearce* v. *Zoning Bd. of Appeals of Brockton,* 351 Mass. 316, 318 [1966]). As the evidence is reported in full, we shall not remand the case for further findings by the trial judge. See G. L. c. 231, § 125A, as amended. The question thus resolves itself into one of how far we should go in attempting to decide the case according to our own judgment of the uncontradicted evidence and undisputed facts. Compare *Skil Corp.* v. *Barnet,* 337 Mass. 485, 487-488 (1958), and the cases cited therein. For this purpose we must examine the evidence (primarily oral) offered by the plaintiff during the course of a brief trial, having in mind that we are in no position to judge the credibility of either of the two witnesses called by the plaintiff.

There was no dispute that the defendants are five members of a family which owns or controls not only the premises in question but also the immediately adjacent premises which are leased to one of the major oil companies (oil company) for use as a gasoline filling station. One paragraph of the 1967 lease of the premises occupied by the plaintiff appears to give the lessee thereof a right of "first refusal" to lease the adjacent premises in certain circumstances which have not occurred and may never occur. The plaintiff's request for permission to use the premises occupied by it for the storage and sale of gasoline was initiated in January of 1971 in the course of a conversation which the plaintiff's treasurer had with

one of the defendants. That defendant (first defendant) replied that there was a clause in the lease of the adjacent premises to the oil company[2] which would not permit him to grant the plaintiff's request without the prior approval of the oil company but that he would be willing to grant permission if the oil company would give its approval and if satisfactory financial arrangements could be worked out to provide additional income to the defendants. The plaintiff's treasurer subsequently advised the first defendant of the amounts (on a gallonage basis) that the plaintiff would be willing to pay the defendants by way of additional income, and the first defendant transmitted that information to one of the other defendants (second defendant). There is no evidence that the plaintiff's proposal was satisfactory to any of the defendants, and we have no means of gauging the reasonableness of the proposal. The plaintiff's treasurer had a conversation with someone who may have been a representative of the oil company; if the oil company's approval of the plaintiff's request was necessary, there is nothing to suggest that such approval was ever forthcoming. There was evidence that the second defendant did not keep a promise to advise the plaintiff's treasurer within a stated time of his reaction to the financial aspects of the plaintiff's proposal. A third defendant appears to have been concerned from a safety point of view with having too much gasoline in the area and with what she regarded as a moral obligation to the oil company.[3] There was evidence that the plaintiff had sustained substantial losses in the operation of the car wash and that it regarded the sale of gasoline to car wash customers as a means of bettering its financial situation; there was no evidence that either topic (if material) was ever discussed with or otherwise brought home to any of

---

[2] No such lease, if there was one, was offered in evidence.

[3] There was no evidence that either of the remaining two defendants was ever made aware of the plaintiff's request.

the defendants. Negotiations appear to have continued intermittently until July of 1972, when two or three of the defendants refused the plaintiff's request for permission to store and sell gasoline.[4]

The final decree declares that "[i]t is not unreasonable for the . . . [defendants] to deny the . . . [plaintiff] the right to store and sell gasoline at retail on the demised premises." The quoted statement suggests the distinct possibility that the plaintiff failed to convince the trial judge that the defendants had acted unreasonably in withholding their consent to the plaintiff's request. See *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 564-565 (1960); *Donoghue* v. *Prynnwood Corp.* 356 Mass. 703, 707-708 (1970); *Broad & Branford Place Corp.* v. *J. J. Hockenjos Co.* 132 N. J. L. 229, 232-233, 235-236 (1944). We need not speculate further as to the actual basis for the judge's determination; there is nothing in the evidence summarized above which requires us to reverse that determination, and we shall not do so.

As we have said, the plaintiff also introduced evidence on the question, so far as it was one of fact, whether the retail sale of gasoline should be regarded as incidental or allied to the conduct of a car wash operation. The plaintiff's treasurer testified that gasoline was sold at two of three competing car washes located within a five mile radius of the premises in question. We regard such evidence as inconclusive at best. See *Sargent* v. *Massachusetts Acc. Co.* 307 Mass. 246, 250 (1940). There was testimony from one who described himself as a realtor specializing in the sale of car washes to the general effect that there had been a thirty year trend toward "gas tie-ins" in the car wash industry; it was his opinion that as many as seventy per cent of all new car washes being installed as of the time of trial (1973) had gasoline tie-ins, "depending on the area." Although the witness had been involved as a broker in the 1970 transaction by which the

---

[4] The bill in this case was filed on August 24, 1972.

lease of the premises in question had been assigned to the plaintiff, the specific examples given by him of the supposed trend in the industry were located in California, Ohio, New York, and "overseas"; there was no evidence whatsoever with respect to the existence of any trend in the metropolitan Boston area in 1967, when the defendants had originally let the premises in question (not then new) to the plaintiff's assignor. Other equally broad general testimony to the effect that "the sale of gasoline is related to the car wash industry" had no persuasive tendency to prove whatever conditions may have existed in or around Saugus in 1967.

On this branch of the case the trial judge's determination was that the terms "incident" or "allied" as used in paragraph 7. A. of the lease "[do] not include or permit as of right a gasoline filling station." The question is, of course, one of mixed law and fact, but we do not reach any question of the proper construction of the lease as matter of law unless we are first convinced as matter of fact that the sale of gasoline was "incident or allied" to the conduct of a car wash operation in Saugus or its environs in 1967. We are not so convinced by the evidence which has been summarized or adverted to. If we assume that the evidence was sufficient to warrant a finding of the propositon contended for by the plaintiff, we see no reason to pronounce the trial judge's determination plainly wrong.[5]

*Decree affirmed.*

---

[5] On this record our conclusion as of any date later than 1967 would be no different.