GENTILE BROS., CORP. *vs.* ROWENA HOMES, INC. & others.[1]

Barnstable.    February 8, 1967. — June 6, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* For sale of real estate, Performance and breach, Termination. *Equity Jurisdiction,* Specific performance.    *Election.    Unlawful Interference.*

Under a purchase and sale agreement providing that the premises should be conveyed on a specified date "by a good and sufficient Quitclaim deed of the Seller, conveying a good and clear title," that "If the Seller shall be unable to give title or to make conveyances as above stipulated . . . all . . . obligations of all parties hereto shall cease," and that "Time is of the essence of this agreement," the purchaser was entitled to specific performance where it appeared that failure to consummate the sale on the specified date was not attributable to the purchaser, that he had rightly relied on the seller's representation that the papers would not be passed on that date, that the seller could not have consummated the sale then by reason of outstanding attachments on the premises, that prior ·to that date the parties had intended to defer the performance of the agreement and several days after that date orally agreed to a discharge of the attachments by use of the purchaser's deposit and to performance of the agreement three days later, that on such later date the purchaser was ready, willing and able to complete the sale even though he was dependent on mortgage financing, but the seller then called "the whole deal off," and that the seller had not acted in good faith.    [589–591]

It could not be said as a matter of law that there was an election by the purchaser under a contract for sale of real estate precluding him from obtaining specific performance thereof where he prosecuted to judgment in a substantial amount and satisfaction thereof an action at law against one not a party to the contract for unlawful interference therewith, and the basis for the assessment of damages in the action did not appear.    [591–592]

BILL IN EQUITY filed in the Superior Court on June 18, 1964.

The suit was heard by *Beaudreau,* J.

*Walter H. McLaughlin, Jr.,* for the defendants Clifton E. Hall & another.

No argument or brief for the plaintiff.

---

[1] Aldege Aubin, president, treasurer and sole stockholder of Rowena; Clifton E. Hall, a real estate broker; and his wife, Anne D. Hall.

KIRK, J. Gentile Bros., Corp. (Gentile Bros.) brought this bill in equity for the specific performance of a written purchase and sale agreement whereby Gentile Bros. agreed to buy and Rowena Homes, Inc., a Rhode Island corporation (Rowena), agreed to sell certain real estate on Sea Street in Hyannis, Massachusetts. The equity suit was tried with two actions at law.[2] No review of the latter has been sought. In the equity suit the final decree ordered the Halls to reconvey the land to Rowena and ordered Rowena, in turn, to convey the land to Gentile Bros. The Halls have appealed.

The judge made an extensive report of material facts which sets out the complex series of transactions leading to the present litigation. We summarize them in the following paragraphs under point 1.

1. Rowena was incorporated sometime prior to 1962. On August 3, 1962, Rowena bought the Hyannis property, which consisted of eleven lots with buildings. The property was subject to a $20,000 first mortgage held by the Sandwich Co-operative Bank. Rowena assumed the first mortgage and, on the date of purchase, executed a second mortgage to one Sherman. On August 22, 1963, the second mortgage was assigned to Hall for $7,000. Hall controlled a corporation, Allstates Mortgage Corp. which lent money secured by second mortgages. The second mortgage was then in default, no payments having been made by Rowena since August 3, 1962. Foreclosure proceedings were imminent. Hall has never taken any steps to foreclose against Rowena. In December, 1963, a $900 attachment was made on the property arising from a claim against Rowena by Automatic Washers, Inc. The "5200 Trust" also made a $3,000 real estate attachment on the same property based on a claim against Rowena Homes, Inc. of Massachusetts,

---

[2] One of the law actions was by Gentile Bros. against the Halls for unlawful interference with the contract between Gentile Bros. and Rowena. The other was by Frederick W. Simcoe, doing business as S & S Real Estate Associates, against the Halls for unlawful interference with the same contract in which Simcoe was allegedly acting as broker for Rowena. An award of damages was made in each case.

which, like the Rhode Island corporation, was owned by Aubin.

Early in March, 1964, Daniel Gentile (Gentile), president of Gentile Bros. and acting on behalf of Gentile Bros. at all times hereinafter mentioned, became interested in purchasing the Hyannis property. On March 14, a meeting was held by Gentile, Hall and Simcoe. A preliminary agreement was made between Rowena and Gentile Bros. Hall proposed to finance the purchase by a mortgage carrying interest at the rate of 1% a month. Gentile instead applied to the Sandwich Co-operative Bank for a purchase money mortgage. The application was approved on April 21, subject to a title search by the bank's attorney, Mr. Swift.

On May 7, 1964, a purchase and sale agreement, drawn by Mr. Gack, the attorney for Gentile Bros., was executed by Rowena and Gentile Bros. The agreement provided that the premises were to be conveyed on or before June 5, 1964, "by a good and sufficient Quitclaim deed of the Seller, conveying a good and clear title to the same free from all encumbrances, excepting restrictions of record, if any there be, and zoning by-laws. . . . If the Seller shall be unable to give title or to make conveyances as above stipulated any payments made under this agreement shall be refunded, and all other obligations of all parties hereto shall cease." It stated that "Time is of the essence of this agreement." On the date that the agreement was signed, Aubin told Simcoe that Hall would take care of discharging the attachments made by Automatic Washers, Inc. and "5200 Trust." Gentile drew a check for $3,400 payable to S & S Real Estate Associates, and gave it to Simcoe to hold in escrow. A few days later Gentile substituted a new check in the amount of $3,500.

On May 22, 1964, Hall, who had received a copy of the purchase and sale agreement, called Mr. Swift. Hall knew that Gentile had applied to the bank for mortgage financing and Hall wished to discuss the two attachments. Mr. Swift advised Hall that the "5200 Trust" attachment, although based on a claim against Rowena Homes, Inc. of Massachu-

setts, was a cloud on the title of the Hyannis property of
Rowena. Mr. Swift gave the same opinion to the bank
prior to May 27. On May 27, Hall told Mr. Swift that he
and Aubin were going to have an attorney draw up a deed
and take care of discharging the mortgages and the two
attachments.

On the following day, as the result of a conversation be-
tween Hall and Aubin, Rowena conveyed the Hyannis prop-
erty to Mrs. Hall. The action was taken without the knowl-
edge of either Mr. Swift or Gentile. Hall drafted the deed
to his wife and the vote of Rowena's board of directors
authorizing the conveyance to her. The consideration for
the deed was $400, allegedly representing a loan from Hall
to Rowena, but in reality a personal loan from Hall to
Aubin.

On June 2, 1964, Hall advised Automatic Washers, Inc.
that its attachment would be discharged on June 5 by means
of the mortgage financing. On the same day, however, Mr.
Swift advised Hall that he would not be at the Barnstable
registry of deeds on June 5 and that papers would not be
passed on that date because of the two attachments. On
June 4, Mr. Swift told Gentile that the two attachments con-
stituted a cloud on the title and that papers would not be
passed at the registry on June 5. "This was the first time
that Daniel Gentile knew of the two attachments." Gentile
also learned from Aubin on June 4 that he would not be at
the registry on the following day because he was going to
New Hampshire.

As a result of these conversations, Gentile did not appear
at the registry on June 5, 1964. Simcoe, who had also been
advised that papers would not be passed, was not at the
registry. Hall, however, did appear at the registry about
noon. He did not have an executed discharge of either the
Automatic Washer's Inc. or the "5200 Trust" attachment.
Nor did he have the required sum to pay off the Sandwich
Co-operative Bank's first mortgage. He had no intention
of doing so, and his insistence at the trial that the agree-
ment called for a cash payment of the full purchase price

on June 5 was untenable. He was representing himself and Rowena, and knew that Rowena was in no position to discharge the mortgage. "Hall's presence at the Barnstable Registry of Deeds on June 5, 1964, was a sham." Although he is not a lawyer, Hall is "very well experienced and knowledgeable with respect to matters of conveyancing and Registry of Deeds procedure."

Subsequently, on June 8, 1964, a meeting was held at Rowena's office. Hall, Gentile, Mr. Gack, Simcoe and Aubin were present. Gentile learned for the first time of the conveyance by Rowena to Mrs. Hall. Hall told Gentile that the reason for the conveyance was to protect Rowena from further attachments in order to facilitate conveyance to Gentile Bros. on June 5, 1964. He suggested that the $3,500 deposit held in escrow by Simcoe be used to pay off the two attachments which all parties believed to be valid and to be a hindrance to a consummation of the sale. Hall told Simcoe to turn the $3,500 check over to Mr. Gack for this purpose. The meeting culminated in an oral agreement by all the parties that the $3,500 deposit would be used to discharge the two attachments in order to satisfy the Sandwich Co-operative Bank, and that the contemplated sale would take place on June 11, 1964. Hall, in Aubin's presence, said there would be no further problem in passing title on that date. He asserted to all present that he would take care of discharging the attachments.

Contrary to the oral agreement, however, Hall, representing Rowena and himself, called "the whole deal off" on June 11, 1964. Aubin fully acquiesced in this action. Gentile Bros. was not at fault. Gentile Bros. was ready, willing and able to go through with the sale on June 11. All parties had full knowledge that the Sandwich Co-operative Bank would have gone through with the passing of papers on that date if the two attachments had been taken care of.

Other events followed. On June 12, Hall transferred the second mortgage, which he had acquired from Sherman, to his corporation, Allstates Mortgage Corp. A certificate of judgment was filed in the registry on June 25 by Automatic

Washers, Inc.  On July 14, Hall gave $1,500 to Aubin in return for Aubin's oral promise to surrender all interest in the Hyannis property to Hall.  All of Hall's actions throughout the course of the negotiations with Gentile Bros. were "well measured and considered steps" toward acquiring the land for himself.  At no time did he intend to facilitate passing title to Gentile Bros.  Neither Hall nor his wife was a bona fide purchaser for value.

2.  The sole question presented by this appeal is whether Gentile Bros. is now entitled to specific performance of the purchase and sale agreement with Rowena.  Gentile Bros.' right to enforce the agreement on or before the scheduled meeting of June 5, 1964, is not questioned.  The Halls, however, asserting the right to raise any defence which would now be available to Rowena (see *Sacks* v. *Martin Equip. Corp.* 333 Mass. 274), contend that Gentile Bros. has, by its actions or failure to act on and after June 5, 1964, rendered the agreement unenforceable and hence is not now entitled to specific performance.

The answer to the contention is that the events of June 5 did not end Gentile Bros.' rights under the agreement with Rowena.  The failure to consummate the sale on that date was not attributable to Gentile Bros.  Gentile had a right to rely on Aubin's statement that he would not be at the registry on June 5 as a representation that papers would not be passed on that date.  Although Hall, representing both himself and Rowena, did appear at the registry on June 5, he was in no position to consummate the sale. Without executed discharges of the two attachments, Rowena could not fulfill its obligation under the purchase and sale agreement to convey clear title.  Gentile Bros. could not be required to accept a deed on terms different from those stated in the agreement.  *Weiner* v. *Simons,* 267 Mass. 327, 329.

Nowhere does it appear that either party to the purchase and sale agreement then intended that the failure to pass papers on June 5 should spell the end of the agreement. Rather, the conversations between the parties and their

agents prior to June 5 show that the parties intended that the agreement should be carried out at a later date. This intent was also manifested by the meeting of June 8 where provision was made for discharging the attachments and the time for performance of the agreement was fixed at June 11. There was an effective waiver of the provision of the purchase and sale agreement which made time of the essence. *Moskow* v. *Burke,* 255 Mass. 563. Even without any waiver, the agreement to convey, made at the meeting on June 8, was binding upon Rowena. Although that agreement was oral, the statute of frauds has not been pleaded and we do not consider its effect. *Stoneham Five Cents Sav. Bank* v. *Johnson,* 295 Mass. 390. *Abalan* v. *Abalan,* 329 Mass. 182, 183.

Whether Rowena could have declared the purchase and sale agreement at an end on June 5 because of the existence of the two outstanding attachments is now beside the point. It did not declare the agreement at an end on that date. Its subsequent actions in making provision for the discharge of the attachments shows that it did not intend that the attachments should defeat the agreement. In any event, the judge's finding that Rowena, by reason of the actions of its representative, Hall, and its acquiescence in those actions, was not acting in good faith prevents Rowena from now raising the defence of nonmarketability of title. The provision in a purchase and sale agreement, that the obligations of the parties shall cease if the seller is unable to give clear title, affords no protection to a seller who is not acting in good faith and does not intend to carry out the agreement. *Moskow* v. *Burke,* 255 Mass. 563, 567–568. *Margolis* v. *Tarutz,* 265 Mass. 540, 543–544. *LaFond* v. *Frame,* 327 Mass. 364, 367. See *J. J. Newberry Co.* v. *Shannon,* 268 Mass. 116, 118.

The acceptance by Gentile on June 8 of the return of the $3,500 check did not constitute a rescission of the agreement. To the contrary, the check was returned to Gentile for the purpose of removing the two attachments on the property in furtherance of the purchase and sale agree-

ment.   Similarly, the contention that Gentile Bros. was not ready, willing and able to complete the sale on June 11, is groundless in face of the judge's finding to the contrary. *Weiner* v. *Simons,* 267 Mass. 327, 330.   There was no inconsistency between the judge's finding that Rowena was not able to complete the sale on June 5 and his finding that Gentile Bros. was able to complete the sale on June 11, even though Gentile Bros. was dependent upon the Sandwich Co-operative Bank for financing.   Rowena's inability to complete the sale on June 5 was due primarily to its failure to remove existing attachments.   The fact that Gentile Bros. was dependent upon the Sandwich Co-operative Bank for financing did not impair its ability to perform on June 11.   All parties were aware that the bank had agreed to provide Gentile Bros. with the mortgage financing. Rowena did not choose to test Gentile Bros.' ability to perform.   *Beck* v. *Doore,* 319 Mass. 707, 710.   Gentile Bros., therefore, has done nothing to prejudice its right to specific performance of the purchase and sale agreement with respect to Rowena.

The Halls also contend that Gentile Bros., by prosecuting to judgment and satisfaction the law action against them for interference with a contractual relationship, made an election which deprives it of the right to a conveyance of the property.   They argue that the damages Gentile Bros. received in the law action are identical with the damages recoverable for breach of contract, and that satisfaction of an award of damages for breach of contract is inconsistent with and precludes a decree for specific performance.   (See *Connihan* v. *Thompson,* 111 Mass. 270, 271–272.)   The law action is not before us.   We do not know the basis upon which the judge assessed damages.   Money damages for interference with a contractual relationship are not inconsistent as matter of law with a decree for specific performance.   See *Doucette* v. *Sallinger,* 228 Mass. 444; *Gould* v. *Kramer,* 253 Mass. 433.   The damages assessed for interference with a contractual relationship are "not for breach of contract but for tort, and include such loss of profits as

the plaintiff can prove resulted directly and proximately from the wrongful acts of the defendants." *H. D. Watts Co.* v. *American Bond & Mortgage Co.* 267 Mass. 541, 552. Whatever loss Gentile Bros. may have suffered due to the delay and inconvenience in obtaining title to the property under the agreement, Gentile Bros. was entitled to recover from one whose wrongful conduct produced the loss. We cannot say as matter of law that the judge who heard both the suit in equity and the action at law could not decree specific performance in the one case and in the other award substantial damages against a defendant who was not a party to the contract.

*Decree affirmed with costs of appeal.*