CHURCH OF GOD IN CHRIST, INC. *vs.* CONGREGATION
KEHILLATH JACOB & others.

Suffolk.   March 2, 1976. — August 17, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& KAPLAN, JJ.

*Contract,* For sale of real estate, Performance and breach, Waiver, Modification.   *Waiver.*

A buyer was entitled to specific performance of a real estate purchase and sale agreement where the seller had waived a condition that time was of the essence by entering into oral extensions of the agreement and by accepting certain payments from the buyer and where the seller had failed to give the buyer clear and definite notice terminating the oral extensions and allowing the buyer a reasonable time for performance of the agreement. [832-835]

---

BILL IN EQUITY filed in the Superior Court on September 4, 1973.

The suit was heard by *Moynihan, J.,* on a master's report.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Edward J. Barshak* for the defendants.

*David L. Taylor* (*Irving C. Levenson & Anthony M. Traini* with him) for the plaintiff.

REARDON, J.   This case is before the court for further appellate review following an opinion in the Appeals Court, 3 Mass. App. Ct. 420 (1975). The case is based on a bill for specific performance of a real estate purchase and sale agreement wherein the defendant Congregation Kehillath Jacob (congregation) agreed to sell certain real estate to the plaintiff. The congregation interpleaded as a party defendant the African Methodist Episcopal Zion Church (AME), which has a claim that it also agreed with the congregation to purchase the property in question. The case was referred to a master for trial, and a Superior Court judge, after confirming the master's report in an interlocutory decree, entered a final decree ordering a conveyance to the plaintiff in accordance with its purchase and sale agreement. In the Appeals Court a majority reversed the final decree in the Superior Court, holding that the plaintiff had failed to comply with its undertakings under the agreement and that specific performance was not appropriate. The facts as found by the master would appear to be as follows.

The plaintiff and the congregation entered into an agreement on October 19, 1972, wherein the congregation agreed to sell, and the plaintiff agreed to buy, the congregation's synagogue building and land on Fessenden Street in the Dorchester-Mattapan section of Boston. The congregation retained the right to use the building for a period not exceeding three years from the passing of papers, during which time the congregation would clean the building, and the plaintiff would supply heating, light, water and main-

tenance. The purchase price was $75,000, of which $10,000 was paid as a deposit on October 19, 1972, a further sum of $25,000 was to be paid at the time of the delivery of the deed, and the balance of $40,000 was to be taken care of by a note secured by a first mortgage payable in five years at seven per cent interest a year. The agreement recited that the deed was to be delivered on December 27, 1972, at the Suffolk County registry of deeds, and that time was of the essence of the agreement. The agreement provided in addition that if the plaintiff failed to perform as agreed all deposits made under the agreement would be retained by the congregation as liquidated damages unless within thirty days after the time for performance of the agreement or any extension the congregation otherwise notified the plaintiff in writing.

The plaintiff on December 27, 1972, was unable to perform under the terms of the agreement and the parties on that day agreed in writing to an extension of the time for performance to January 26, 1973, with the plaintiff agreeing to make additional deposits totaling approximately $11,000; and if the payments were made, there was to be a further extension in time to February 26, 1973. These payments were made by the plaintiff and deposited by the congregation although they were not made on the dates set out in the extension agreement. On February 26, 1973, the plaintiff was again unable to perform and did not on that date make payment of the $14,000 balance of the $25,000 due on the date of the delivery of the deed. However, the parties did on that date enter into an oral extension of the purchase and sale agreement which did not set a specific date for performance but provided an additional reasonable time for the plaintiff to raise the needed funds. The extension was to last only so long as payments were made under the purchase and sale agreement or until there was a change in circumstances or pressure was placed on the president of the congregation by the members. The congregation did in fact receive from the plaintiff varying sums totaling $4,441 between February 12, 1973, and June 12, 1973. On April 10, 1973, the plaintiff procured a condi-

tional use permit from the board of appeal of Boston to operate a day care center on the premises. In June it paid $560 for fifty-six windows and paid in addition for repair work. On June 12, 1973, the attorney for the congregation was informed by the bishop of the plaintiff that the plaintiff was experiencing financial difficulties but expected to be able to produce sufficient funds to complete the transaction by August or the first of September. The attorney indicated that this arrangement was satisfactory to him so long as it met with the approval of the president of the congregation. After June 12, 1973, the plaintiff made no further payments to the congregation although it did continue to make various payments for expenses associated with the use and maintenance of the building.

Early in July the congregation through its president informed the bishop of the plaintiff that there was a new prospective purchaser and, in fact, on July 16, 1973, AME offered to purchase the property for $75,000, which offer was accompanied by a deposit of $2,500, which was subsequently returned. The congregation informed the plaintiff of this offer. On July 27, 1973, the congregation notified the plaintiff by letter that as a result of the plaintiff's failure to perform under the purchase and sale agreement the agreement was cancelled. Shortly thereafter, following some further negotiations, AME, on August 10, 1973, agreed to purchase the property on terms acceptable to the congregation.

On August 22, 1973, the plaintiff tendered to the congregation a number of checks whose total amount exceeded that called for under the written extension agreement. The plaintiff informed the congregation that it was ready, willing and able to perform and was prepared to execute the note called for under the agreement. The congregation refused to accept the payment. On August 24, 1973, the plaintiff again offered to purchase the property and was again refused by the congregation which instead on that date entered into a purchase and sale agreement with AME for a $25,000 down payment, $50,000 to be paid on the passing of papers on October 16, 1973. The question before

us is whether there was error on the part of the trial judge in ordering specific performance of the purchase and sale agreement between the plaintiff and the congregation on the foregoing facts.

In reviewing this case we treat the master's subsidiary findings of fact as binding unless they are "mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law." *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825 (1973). *Gil-Bern Constr. Corp.* v. *Medford*, 357 Mass. 620, 623 (1970). However it is open to us and is our responsibility to draw our own inferences from those subsidiary findings. See *Corrigan* v. *O'Brien*, 353 Mass. 341, 345-346 (1967); *Samia* v. *Central Oil Co.*, 339 Mass. 101, 122 (1959). Furthermore, where the master finds subsidiary facts, and the evidence is not reported, such facts prevail over any conclusion reached by him which is inconsistent with the subsidiary facts he found. *MacLeod* v. *Davis*, 290 Mass. 335, 337-338 (1935), and cases cited. The determinative question is whether the decree which has been appealed from is within the scope of the pleadings and is supported in the facts found and the reasonable inferences therefrom. See *Marine Contractors Co.* v. *Hurley*, 365 Mass. 280, 282 (1974); *Gordon* v. *Anderson*, 348 Mass. 787 (1965).

In subsidiary finding No. 7, the master found that time was of the essence of the October 19, 1972, agreement entered into between the plaintiff and the defendant. An initial question presented in this case is whether the record discloses that the parties had a joint intention that time continue to be of the essence up until July 27, 1973, when the congregation notified the plaintiff that the agreement was cancelled. That that is doubtful is indicated in the written extension of the agreement dated December 27, 1972, and, as the plaintiff contends, by the oral extension of February 26, 1973, by the fact that the defendant continued to accept payments from the plaintiff, and by the continual dealings between the parties. It is the course of these dealings which determines the nature of the extension. The issue before us is whether there was a mutual

agreement by the parties that the time named in the contract for performance had been modified and to what date the modification could reasonably be said to extend. See *Gentile Bros.,* v. *Rowena Homes, Inc.,* 352 Mass. 584, 589-590 (1967).

The master found that on February 26, 1973, the parties entered into an oral extension of the purchase and sale agreement which provided the plaintiff with additional reasonable time to perform and did not specify an exact time for performance. The plaintiff continued to fulfil its obligations under the original agreement with respect to the maintenance of the building and made a number of payments to the congregation totaling more than $4,000, which were accepted. There does not appear to have been any formal payment schedule to which the congregation was demanding adherence. Rather what seems to have been contemplated by the parties, as reflected by their behavior, was a somewhat informal arrangement by which the plaintiff would continue to make payments to the congregation while the plaintiff engaged in the process of raising funds sufficient to allow it to close the deal. Furthermore, it appears that on June 12, 1973, the counsel for the congregation was informed by the bishop of the plaintiff that the plaintiff was experiencing financial difficulties but had the expectation of sufficient funds in hand to complete the transaction in August or the first of September of that year. There is no indication in the record or the subsidiary findings that this plan met with disapproval from the congregation or its president. It would seem that the conversation was the basis of an oral extension binding on both parties. See *Moskow* v. *Burke,* 255 Mass. 563, 566-567 (1926). To be noted is that the plaintiff was prepared to perform on August 22, 1973, in accordance with its representation to the congregation on June 12, 1973.

Whether we give effect to the June 12 conversation as an oral extension of the agreement or not, the congregation in any event cannot be said to have given the plaintiff adequate notice to establish a proper cancellation of the

contract under the oral extension of February 26, 1973. See *Porter* v. *Harrington,* 262 Mass. 203, 208-209 (1928), and cases cited. In the circumstances of this case, clear notice of impending cancellation was a requisite. The conduct of the congregation through the spring months and following the conversation of June 12 reasonably led the plaintiff to understand that an extension was in order until the plaintiff could perform presumably around the end of August. See *M. DeMatteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 258 (1960); *Porter* v. *Harrington, supra* at 207-208. Early in July, on receipt of the new offer from AME, the congregation may have wished to formalize again its contractual relationship with the plaintiff, to make time of the essence once again, or perhaps to withdraw from the contract altogether in order to take advantage of the more favorable terms offered by AME. However, it is generally recognized that after a variation of performance by a date certain has taken place in that the obligee has accepted payments after default or waived the condition, that condition can be recreated only by a definite notice to the debtor providing that the notice "gives a reasonable time for making up past deficiency." See 3A A. Corbin, Contracts § 722 (1960). It is likewise required that such notice must be clear and definite as to time of payment and to the fact that nonperformance on time will serve to dissolve the contract. Such notice was not given in this case.

Furthermore, there was no tender of performance by the congregation which would have served to place the plaintiff in default. See *Flynn* v. *Wallace,* 359 Mass. 711, 715-716 (1971), a case where there also occurred a modified time and manner of performance. And, as the plaintiff contends, if the letter of July 27, 1973, constituted a demand for performance and a termination of the oral extensions of the agreement, the plaintiff's performance approximately three weeks later was within the area of reasonableness. *Mansfield* v. *Wiles,* 221 Mass. 75, 83 (1915).

When there is considered the obtaining of the zoning variance, the payment of utility bills, the payments for repairs, as well as $1,600 for iron grill work to protect new

windows, it would appear that there was reliance on the purchase and sale agreement which must have been noted and concurred in by the congregation. In view of our opinion that there was a waiver and that time was not of the essence, and testing all the circumstances of this case including the conduct of the parties, we consider the plaintiff's tender of August 22, 1973, timely and within reason. It follows that the final decree of the Superior Court should be affirmed.

*So ordered.*