RICHARD B. WHITNEY *vs.* BARBARA C. JOHNSON.[1] March 14, 1984. *Contract*, Performance and breach, For sale of real estate.

It is symptomatic of the overkill unleashed on this case that it required the entry of twelve judgments in the Superior Court to dispose of the various claims and counterclaims. The underlying transaction is a single-family house sale, which went awry, and the dispute is about who failed to perform. A jury found it was the seller, Barbara C. Johnson, and she has appealed from the resultant judgments. She appeals as well from several judgments entered on the basis of directed verdicts adverse to her.

Upon conflicting evidence, the jury could have found the following: Johnson and the buyers, Richard B. Whitney and Margaret P. Whitney, executed a pur-

---

[1] Barbara C. Johnson counterclaimed against Whitney and filed third-party claims against Chestnut Hill Homes, Ltd., Sylvia Zaplin, Hunneman & Co., Inc., and Dorothy Gold. Zaplin was an employee of Chestnut Hill Homes, Ltd., and Gold was an employee of Hunneman & Co., Inc. These two corporations acted as co-brokers in the sale of the property around which the controversy revolves.

chase and sale agreement (on the Greater Boston Real Estate Board form) dated March 8, 1978, respecting Johnson's property at 249 Mt. Vernon Street, Newton. The Whitneys paid a $7,550 deposit on a purchase price of $75,000. Delivery of the deed was to occur at 9:00 A.M. on May 30, 1978, at the South Middlesex Registry of Deeds. Section 8 of the agreement made time of the essence. Chestnut Hill Homes, Ltd. (Chestnut Hill), and Hunneman & Co., Inc. (Hunneman), acted as co-brokers and were to split the commission.

At 11:45 P.M. on May 26, 1978, Johnson called Richard Whitney (Whitney) in Chevy Chase, Maryland, from where he was moving, and told him that she could not be out of her house until around June 12, 1978. Whitney came up to Newton and on May 28th and 29th drove by the property he was to buy and observed no evidence that its owner, Johnson, was packing or moving. Dorothy Gold, who acted for Hunneman, and Zaplin, who acted for Chestnut Hill, tried to reach Johnson by telephone but could not reach her.

On May 30th, Johnson made a tender at 9 A.M. at the South Middlesex Registry of Deeds, and, as was scarcely surprising in view of her call to him, did not find Whitney there. At that time Johnson could not have delivered title free of encumbrances, as the agreement required, because she did not have in hand or available discharges of mortgages from an institutional first mortgagee (a bank) and from an individual second mortgagee.

A flurry of maneuvers for legal advantage followed. Johnson arranged to advertise her property for sale and sent a telegram to Zaplin and Chestnut Hill demanding the deposit made by the Whitneys as liquidated damages. Whitney's lawyer sent a mailgram insisting that Johnson set a new closing date. On June 2, 1978, Whitney's lawyer filed an action for specific performance.[2] On June 7, 1978, Whitney, Johnson, their lawyers, and Mr. Harris, the lawyer for Whitney's prospective mortgagee, convened on neutral ground: a private meeting room of the Middlesex County Bar Association in the courthouse in Cambridge. They parleyed. The upshot was a new closing date of June 16th.

On June 16, 1978, the parties and their lawyers and Mr. Harris forgathered in Needham at 4 P.M. at an office of the Mutual Bank for Savings, which was providing the Whitneys with a mortgage loan. It was apparent that there was not time enough to get papers on record in East Cambridge. Conversation, accordingly, turned to escrow arrangements and almost at once the closing turned into a fiasco. Johnson resisted the usual and obvious: that the bank lawyer (Mr. Harris) hold the funds and papers.[3] Harris and everybody else, for their part, declined to leave the funds with one of Johnson's lawyers. Perhaps, Johnson countered, Whitney's lawyer, Mr. Bielitz, would hold the documents and funds over the weekend? Mr. Bielitz demurred. He was coaxed and consented. Bank counsel

---

[2] Although the purchase and sale agreement listed Richard B. Whitney and Margaret P. Whitney as the buyers, the agreement was signed only by Whitney and Mrs. Whitney is not a party to the various claims and counterclaims.

[3] Johnson thought Harris was not to be trusted because his mother was a principal in Chestnut Hill Homes, Ltd., one of the co-brokers.

and buyer were satisfied with that arrangement. Presumably operating on the principle that if it was satisfactory to her adversaries it must be unsatisfactory to her, Johnson retracted her suggestion and insisted upon one of her lawyers, Mr. Diamond, as escrowee. The parties were not deadlocked. Harris volunteered to close the following Monday (the next business day) at the Registry of Deeds, thus obviating the need for an escrowee. Buyer said he would cover any attendant expenses of seller. Nothing availed and the session broke up at 6 P.M.

1. By an amended complaint filed August 8, 1978, Whitney dropped his claim for specific performance and limited himself to damages. As indicated in the opening paragraph of this opinion, he was partially successful in that the jury returned a verdict requiring Johnson to pay back Whitney's $7,550 deposit.

All that needs to be decided on Whitney's claim is whether the facts the jury could have found warrant the conclusion that Johnson, the seller, was the party who failed to perform the agreement. As in *Gentile Bros. Corp.* v. *Rowena Homes, Inc.*, 352 Mass. 584, 588-589 (1967), the buyer had a right to rely on the import of what the seller had said: that she would not be at the registry on the date specified in the agreement. Although the seller, Johnson, went through the forms of a tender at the registry, she could not, because she did not possess mortgage discharges, "fulfill [her] obligation under the purchase and sale agreement to convey clear title. [Whitney] could not be required to accept a deed on terms different from those stated in the agreement." *Id.* at 589. The jury could have found that the tender was a sham, *id.* at 588, and that Johnson had caused the closing to abort on the date fixed in the agreement. The jury might have inferred from the obdurate conduct of Johnson at the re-scheduled closing that she had not acted in good faith.

Although much of the trial, which stretched from April 14, 1981, to May 6, 1981, seems to have dealt with whether Johnson had waived the May 30th closing date set in the agreement, whether the parties, by their conduct, had agreed to the June 16th date, and whether the matter had been taken out of the Statute of Frauds (G. L. c. 259, § 1), we need not decide any of those questions or consider the many claims of error by Johnson in connection with them. The rights of Whitney to a return of his deposit and the brokers to their commission were determined by Johnson's failure to perform on May 30th. What followed merely lent color. Compare *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob*, 370 Mass. 828, 834-835 (1976); *Hazard* v. *Keefe*, 3 Mass. App. Ct. 775, 776 (1975), and cases cited. Contrast *American Oil Co.* v. *Katsikas*, 1 Mass. App. Ct. 437 (1973), which had to do with an option and involved no bad faith.

2. On the view we have taken of the case, it is not necessary to consider the propriety of receiving parol evidence on modification of the agreement. Parenthetically, we note that the evidence did not seem to be directed at establishing an amendment of the agreement, but just that the "time of the essence" provision had been waived. See *Hazard* v. *Keefe, supra* at 776.

3. Any flaw in the judge's instructions on intentional interference with contractual relations (with which Johnson charged the brokers) was repaired later in his charge, and he instructed the jury in accordance with the standard set forth in

*Grammenos* v. *Zolotas*, 356 Mass. 594, 597 (1970). Moreover, Johnson's counsel failed to object to that portion of the instruction as given. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974); *Buker* v. *Melanson*, 8 Mass. App. Ct. 325, 328 (1979).

4. The diffuse brief filed on behalf of Johnson asserts many other errors which we treat summarily. The extensive argument that Johnson was entitled to a directed verdict overlooks that the record appendix contains no motion for a directed verdict by Johnson, nor does the docket disclose that such a motion was filed on her behalf.[4] We have examined the evidentiary rulings about which Johnson protests. We determine that those rulings were correct and, in any event, well within the scope of the judge's discretion. There was no error in permitting Mr. Bielitz, who represented Whitney, and Mr. Harris, who represented the prospective mortgagee, to testify. The appellant misapprehends the import of Disciplinary Rule 5-102(A), 359 Mass. 814 (1972). That rule does not prevent lawyers from appearing as witnesses. Subject to certain exceptions, it requires a lawyer who learns that he "ought to be called as a witness on behalf of his client . . ." to "withdraw from the conduct of the trial . . . ." See *Borman* v. *Borman*, 378 Mass. 775, 785-788 (1979). Mr. Bielitz and Mr. Harris did not participate in the conduct of this trial. They filed no appearances, examined no witnesses, made no objections, filed no motions, and made no argument.

The judgments are affirmed, the order denying the motion for a new trial is affirmed, and the appellees are to have double costs and penalty interest.

*So ordered.*

*Edward J. Collins* for Barbara C. Johnson.
*Claudia J. Billings* for Hunneman & Co., Inc., & another.

---

[4] There appears in the record a document captioned "Motion for a Directed Finding for the Defendant Johnson." That paper was, however, filed prior to the commencement of trial. Whatever the pleading is — it sounds something like a motion to dismiss — it cannot have been a motion for a directed verdict which may be filed no sooner than the close of an opponent's evidence. Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974).