ROBERT D. QUIRK *vs.* MARVIN W. SCHENK & another.[1] No. 92-P-340. May 17, 1993. *Real Property*, Sale. *Contract*, Sale of real estate, Performance and breach.

On August 26, 1988, Quirk (through a nominee) entered into a purchase and sale agreement with the Schenks by which Quirk undertook to buy and the Schenks to sell the Schenks' residence at 69 Old Marlborough Road in Maynard. The closing date specified was December 1, 1988. The three-month deferment of closing evidently was related to the fact that the Schenks during this period were building and acquiring a home in Florida to which they planned to move.

---

[1] Catherine A. Schenk, his wife.

The parties entered into three extensions of the agreement: the first on November 29, 1988, extending the closing date to December 15, 1988; the second on December 15, 1988, extending to December 21, 1988; the third and final on December 23, 1988, extending to January 10, 1989. As delays had developed in Florida, the parties agreed as part of the second and third extensions that the Schenks could remain in the Maynard house into the month of March, 1989, at a monthly rental of $1,100, payable to Quirk.

At the time of the third extension, Quirk put the Schenks in funds for their Florida transaction by paying them $55,377.17 to be counted toward the purchase price of the Maynard house; this was in addition to Quirk's previous deposits of $20,300. The total of $75,677.17 was a substantial part of the amount of the Schenks' "equity" — the amount becoming payable to them pursuant to the agreement over and above the outstanding mortgage to be refinanced.[2]

On January 10, 1989, Quirk did not appear for closing. The judge found that on December 23, 1988, Quirk had informed the person who was acting as his counsel[3] that he needed a thirty-day extension. Although he signed the December 23 extension, Quirk, according to his testimony, did not read it. If this was so, Quirk must have been startled by the call to a closing on January 10. At any rate, he did not close on that day.

Rather surprisingly in light of the previous accommodations in their favor, the Schenks at this point would not agree to any extension of the closing date, even though Quirk told them repeatedly during January and February, 1989, that he was ready to close. Neither were the Schenks willing to repay any of the money they had received.

Accordingly, Quirk commenced the present action against the Schenks for specific performance of the agreement.[4] The Schenks defend by pointing to the standard time-of-the-essence provision of the agreement. This makes a hollow clang against the circumstances of the case. Here the parties extended the agreement three times, and executed the third extension two days after the closing date mentioned in the second extension. The parties arranged for the Schenks to occupy the Maynard house beyond the stated closing date to meet the delay in Florida, and Quirk made a substantial payment ahead of the closing date. The time clause has become "a provision upon which the [Schenks] cannot rely equitably in the circumstances." *M. DeMatteo Constr. Co.* v. *Daggett*, 341 Mass. 252, 262

---

[2] The purchase price of the Maynard house was $223,000; the outstanding mortgage $130,000. Quirk's original deposit with the broker was $15,000, to which Quirk later added $5,300. Then on December 23, 1988, Quirk paid $55,377.17. Reserved for the broker's commission was $11,150. (Figures may not be exact.)

[3] The person was a lawyer under suspension from practice. Quirk did not know of the disability at the time.

[4] Alternatively, Quirk prayed for return of the money he paid out, but he preferred specific performance.

(1960). See *Morgan* v. *Forbes*, 236 Mass. 480, 485-486 (1920); *Porter* v. *Harrington*, 262 Mass. 203, 207 (1928); *Gentile Bros.* v. *Rowena Homes, Inc.*, 352 Mass. 584, 589-590 (1967); *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob*, 370 Mass. 828, 832-834 (1976); *Lagasse* v. *Lagasse*, 20 Mass. App. Ct. 911, 914 (1985). Cf. *Gevalt* v. *Diwoky*, 319 Mass. 715, 716 (1946). And the inequity becomes overwhelmingly plain when we consider that holding strictly to the closing date would mean, according to the Schenks' submission, that they could retain the money they received as well as the house.

The Schenks make a pass at trying to justify their keeping the money by invoking a liquidated damages provision of the agreement, but the judge rightly saw a gross disproportion here that rendered the provision unenforceable (even if it were taken to be relevant to the situation). The judge was right to dismiss a counterclaim by the Schenks as unproved (even were it pertinent) and to deny their motion for a new trial.

*Judgment affirmed.*
*Order denying motion for new*
*trial affirmed.*

*Steven E. Bauman* for the defendants.
*Barry S. Fischer* for the plaintiff.

