Fishman, J.
The plaintiff, Leasecomm Corporation (“Leasecomm”), through its motion for summary judgment, requests that this Court enter a declaratory judgment that the defendant, Hollyleaf Group, Inc. (“Hollyleaf’), failed to comply with the terms of the alternative dispute provision (“ADR provision”) of their contract, arid that because of this failure, Hollyleaf has waived any rights to pursue its claims against Leasecomm. In its cross motion, Hollyleaf asserts that both parties waived the time requirement of the ADR provision, and, therefore, when it submitted the dispute to mediation, it was not untimely. For the following reasons, Leasecomm’s motion for summary judgment is DENIED, and Hollyleaf s cross motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed facts are as follows. The dispute between the parties arises from a Purchase Agreement (“Agreement”) entered into on January 3, 2001. Pursuant to the terms of the Agreement, Leasecomm was entitled to hold back one million dollars of the purchase price (“Hold Back amount”) due Hollyleaf until a software program, named AMI 2000, was completed. The Agreement also contained an ADR provision which provided that:
If any dispute arises under this Agreement between the Seller and the Buyer, such dispute shall be resolved as follows:
(a) The Seller and the Buyer shall promptly meet; and each agrees to use its best efforts to reasonably resolve the dispute without resort to Mediation or Arbitration;
(b) In the event the Seller and the Buyer cannot reasonably resolve any such dispute between them pursuant to Section 12.14(a), then the dispute shall be submitted by either the Seller or the Buyer for informal mediation (“Mediation”) within ten (10) days of the date the dispute shall first arise . . . Mediation shall be concluded within ninety (90) days of its commencement. Mediation shall be a condition precedent to either the Seller’s or the Buyer’s right to pursue any other remedy available under this Agreement or otherwise available under law.
(c) In the event the Seller and the Buyer cannot resolve the dispute by Mediation, then such dispute shall be submitted to binding arbitration (“Arbitration”) . . . Any and all disputes shall be submitted to Arbitration within one (1) year from the date the dispute first arose or shall be forever barred. The Seller and the Buyer agree that Arbitration hereunder shall be in lieu of all other remedies and procedures, and shall be the exclusive method for resolving any disputes arising out of this Agreement.
Section 12.14 (emphasis added).
In April and May of 2001, Henry “Chip” Nichols, (“Nichols”), the president of Hollyleaf, notified Richard Latour (“Latour”), the executive vice president, chief financial officer and chief operating officer of *679 Leasecomm that all of the conditions for the release of the Hold Back amount had been met, and requested that Leasecomm relinquish the money. On July 24, 2001, Latour responded to Nichols stating that there were at least five areas where the software was deficient, and that Leasecomm would not release the Hold Back amount.[1] The parties agreed that, pursuant to the ADR procedure provided for in the Agreement, they should schedule a time to discuss the deficient areas. The meeting was scheduled for August 29, 2001, the earliest and most convenient time for both parties. At this meeting, Leasecomm agreed that all, but two, of the criteria for the AIM 2000 completion had been met. At the conclusion of the meeting, Nichols indicated that he would review the materials Leasecomm provided, and that he would respond soon thereafter. On September 4, 2001, Nichols sent an e-mail to Leasecomm reflecting on the August 29, 2001 meeting, and indicating that Hollyleaf understood that the parties were going to continue negotiating the remaining issues. On October 9, 2001, Hollyleaf provided Leasecomm with a letter reiterating its position on why the Hold Back amount should be released, and made a settlement offer for a reduced amount. On December 4, 2001, Leasecomm had not responded to the letter. At that time, Nichols deemed the negotiations to be unsuccessful, and on December 7, 2001, pursuant to the Agreement, he initiated mediation proceedings.
On December 10, 2001, Leasecomm wrote to Hollyleaf saying that it intended to continue negotiations. On February 18, 2002, approximately eighty days into the ninety-day period allowed for mediation, Leasecomm raised the issue of timeliness of the mediation proceeding. On February 28, 2002, Leasecomm filed its Complaint with this Court seeking a declaratory judgment on the issue of whether Leasecomm is obligated to mediate the dispute. On March 13, 2002, after the ninety-day period for mediation expired, Hollyleaf, pursuant to the American Arbitration Association (“AAA”) Mediation Rules, informed the AAA that it was terminating the mediation as unsuccessful. Pursuant to Section 12.14(c) of the Agreement, the termination of mediation required that the dispute be submitted for binding arbitration. On March 21, 2002, Hollyleaf filed a Demand for Arbitration with the AAA. At this time, the arbitration is pending.
DISCUSSION
Summary judgment will be granted when there are no genuine issues as to any material facts and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles it to judgment in its favor as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
The issue before this Court is whether Hollyleaf waived its right to arbitration by failing to timely file for mediation within ten days of the date that the dispute first arose. This Court will address the matter both in its procedural context and by an analysis of the contractual provisions at issue.
The question of whether a party has waived its right to arbitration is generally a question for the court to determine. See Martin v. Norwood, 395 Mass. 159, 162 (1985). As with any contractual right, the right to arbitration may be lost if it is not asserted in a timely manner. See Home Gas Corp. of Massachusetts, Inc. v. Walter’s of Hadley, Inc., 403 Mass. 772, 775 (1989). However,
where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage .. . Such a presumption is particularly applicable where the clause is broad.[2]
Local Union No. 1710, Int’l Ass’n of Fire Fighters v. City of Chicopee, 430 Mass. 417, 421 (1999), quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986). Generally, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.” Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 633 (1994), quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).
Waiver may result when a party acts “inconsistently” with its right to arbitration. Home Gas Corp. of Massachusetts, Inc., 403 Mass. at 775. In determining whether a party waives its rights, the court must look to the totality of the circumstances. Id. The court should consider several factors, including:
whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right. . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff . . . whether there has been a long delay in seeking a stay or whether the *680 enforcement of arbitration was brought up when trial was near at hand . . . whether the defendant!] [has] invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings . . . and whether the other party was affected, misled, or prejudiced by the delay . . .
Id., at 775-76, quoting Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo., 614 F.2d 698, 702 (10th Cir.), cert. denied, 449 U.S. 824 (1980).
In applying these factors, this Court concludes that the filing of this action has not harmed either party to the extent that the right to arbitrate should be deemed waived. First, to date, the litigation has focused on the issue of arbitration and not the merits of the dispute. Second, there has been no formal discoveiy relating to the merits of the case. See Creative Solutions Group, Inc. et al. v. Pentzer Corp., 252 F.3d 28, 33 (2001) (concluding that the lack of discoveiy was one factor supporting the decision that arbitration had not been waived). Third, after Leasecomm filed a declaratory judgment, Hollyleaf immediately responded with a motion to compel arbitration, which motion was subsequently denied. See id. (holding that motion to compel arbitration did not prejudice the other party). Finally, one year later, the parties filed the present motions for summary judgment. The one year that this case has been in litigation, during which the issue of arbitration has been paramount, does not present a situation where the passage of time has affected, misled, or prejudiced the other party. Compare Home Gas Corp. of Massachusetts, Inc., 403 Mass. at 777 (holding that a party could not insist on a right to arbitration after a two and one-half year delay and when significant discoveiy had been completed). Accordingly, because neither party has been prejudiced by the litigation to date, nor has either party abused the judicial process, this Court cannot conclude that “the litigation machineiy had been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated.” Creative Solutions Group, Inc. et al., 252 F.3d at 33, quoting Jones Motor Co., Inc., v. Chauffeurs, Teamsters, and Helpers Local Union No. 633, 671 F.2d 38, 44 (1st Cir. 1982). Therefore, from a procedural perspective, Hollyleaf did not waive its right to arbitration.
Hollyleaf also did not waive its right under its Agreement with Leasecomm. The fundamental rules of contract interpretation require that the court “must give effect to the parties’ intention and construe the language to give it reasonable meaning wherever possible." Joseph Fancese, Inc. v. DOS Concrete Serv's., Inc., 47 Mass.App.Ct. 367, 369 (1999). In interpreting contracts, words that are “plain and free from ambiguity must be construed in their usual and ordinary sense.” Cady v. Marcella, 49 Mass.App.Ct. 334, 338 (2000), quoting Ober v. National Cas. Co., 318 Mass. 27, 30 (1945). The contract must be considered “as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.” Id., quoting USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989).
It is undisputed that the parties in the case at bar intended for the Agreement to contain a provision that mandates alternative dispute resolution. This agreed-upon provision is sufficiently clear and unambiguous. The provision clearly sets out a three-step format for resolving disputes, with each step being a condition precedent to the next step. First, the parties are required to “promptly meet” and “use their best efforts” to resolve the dispute without mediation or arbitration. If such efforts fail, as a second step, one of the parties must submit the dispute for informal mediation within ten days of when the dispute first arose. The words, “the date that the dispute shall first arise,” are not further defined by the agreement but are themselves unambiguous and capable of being construed in their usual sense and consistent with the language and purpose of the balance of the ADR provision. Mediation is a condition precedent to binding arbitration, which is the third and final step of the mandatoiy alternative dispute resolution process. A time limitation for the commencement of arbitration is also established, i.e., “one (1) year from the date the dispute first arose . . .”
Clearly, the dispute between the parties first arose on July 24, 2001, when Leasecomm stated that it would not release the Hold Back amount. When the parties failed to meet within ten days after July 24, 2001, they waived the time requirement contained in the second step of the ADR provision. A waiver is a “voluntaiy or intentional relinquishment of a known right.” Merrimack Mut. Fire Ins. Co. v. Nonaka, 414 Mass. 187, 190 (1993). Conditions of a contract may be weaved “either expressly or by words and conduct.” Owen v. Kessler, 56 Mass.App.Ct. 466, 470 (2002) (citations omitted). Once there has been a waiver, “time is no longer of the essence.” McCarthy v. Tobin, 429 Mass. 84, 89 (1999).
In this case, the parties mutually agreed to first meet to resolve the dispute on August 29, 2001, more than a month after the date the dispute first arose. It thus became impossible to submit the dispute for mediation within ten days of July 24, 2001. This conduct resulted in a waiver by both parties of the time requirement associated with implementing the second step of the ADR provision.
Leasecomm argues that the ten-day period should have commenced with the August 29, 2001 informal meeting. Under this interpretation of the ADR provision, Hollyleaf should have submitted the dispute for mediation by September 8, 2001. However, when “a variation of performance by a date certain has taken place, in that the [party] has .. . waived the condition, that condition can be re-created only by a definite notice ... providing that the notice ‘gives a reasonable *681 tíme for making up past deficiency.’ ” Church of God in Christ, Inc., v. Congregation Kehillath Jacob, 370 Mass. 828, 834 (1976), citing 3A A. Corbin, Contracts, §722 (1960). Leasecomm cannot unilaterally ascribe August 29, 2001 as the date on which the dispute is deemed to have first arisen. Having waived the initial ten-day requirement, if Leasecomm intended for the ten days to run from August 29, 2001, it should have provided Hollyleaf with notice of that intention. No such notice having been provided, the previously waived ten-day requirement was never re-created.
The remaining terms of the ADR provision were capable of being honored even with the waiver of the ten-day period. The parties could have submitted the dispute for mediation at a time consistent with the other terms of the provision. Indeed, that is what Hollyleaf did by initiating mediation in December 2001. In March 2002, after the passage of ninety days, Hollyleaf terminated the mediation. Consistent with the ADR provision, Hollyleaf filed a timely demand for arbitration with the AAA, le., a demand within one year of the date the dispute arose. Thus, both the express language and the purpose of the ADR provision will be satisfied by requiring the parties to participate in binding arbitration.[3]
ORDER
For the foregoing reasons, Leasecomm’s motion for summary judgment is DENIED, and Hollyleaf s cross motion for summary judgment is ALLOWED. Further, it is hereby ORDERED that the parties submit this dispute to the American Arbitration Association to continue the arbitration proceedings commenced in March 2002.

The merits of this dispute are not before this Court.

A “broad” arbitration clause is a standard clause stating that “ ‘all disputes’ regarding the agreement are subject to arbitration.” Local Union No. 1710, at 422. Judge Sikora of this Court has previously concluded that the arbitration clause in this Agreement is, in fact, broad.

Leasecomm is hard-pressed at this juncture to complain that it never had the benefit of informal mediation given that it had the opportunity to participate in mediation but chose not to do so.